```
            UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


PARSA MOHEBI, M.D.,              :   CIVIL NO. 1:07-CV-2255
                                 :
          Plaintiff,             :
                                 :   (Judge Conner)
     v.                          :
                                 :   (Magistrate Judge Smyser)
                                 :
YORK HOSPITAL/WELLSPAN HEALTH,   :
                                 :
          Defendant,
```

## REPORT AND RECOMMENDATION

    The complaint initiating this civil action (Doc. 1), filed on December 12, 2007, is brought by a medical doctor who aspired to become a surgeon but was denied promotion at the defendant hospital from a third year surgical residency to a fourth year surgical residency.  Dr. Parsa Mohebi, the plaintiff is an "Iranian male naturalized citizen of the United States" (Doc. 1, ¶ 4).  His third year surgical residency was in a program at the defendant York Hospital/Wellspan Health.  *Id.*, ¶¶ 6,8.

    In his complaint, the plaintiff alleges that when in 2003 he was hired as a third year surgical resident by the defendant, there were delays in the plaintiff's course of obtaining his medical training license in Pennsylvania, delays that the defendant knew would occur when the plaintiff was offered the third year residency position.  *Id.*, ¶ 12.  The complaint alleges that the plaintiff was told by the defendant that he would need to repeat his third year residency and that

he would need to do so "because of the delays" (*Id.*, ¶ 13), but that the defendant then "changed the reason" and "claimed that [the plaintiff] was 'not ready' to progress to PGY-4." *Id.*, ¶ 14. The plaintiff in July 2004 began another year at level PGY-3. *Id.*, 15. In January of 2005 he was told by the defendant that he was not ready for promotion to PGY-4. *Id.,* ¶ 16. He had not previous to that communication been told of any shortcomings on his part or of any problems in his training. *Id.,* ¶ 17. He learned that the decision to deny his promotion "stemmed from certain of the attending physicians." *Id.,* ¶ 18. These physicians, it is alleged, had "denied him opportunities to scrub for surgeries." *Id.,* ¶ 18. These physicians who issued these evaluations had spent very little time with the plaintiff. They issued evaluations that "contrasted starkly" with evaluations of physicians who had worked more frequently with the plaintiff. *Id.,* ¶ 18.

   The complaint alleges that the plaintiff of all PGY-3 residents in the defendant's program scored the top score on the national surgical in-service examination, a score that was also among the top three scores of all of the defendant's surgical residents. *Id.,* ¶ 19. It also alleges that the defendant, although it decided to require plaintiff to repeat the PGY-3 residency level program, incongruously completed and filed with the Pennsylvania State Board of Medicine a form ("Verification of ACGME Approved Graduate Medical Training") certifying that the plaintiff had on February 18, 2005 completed his third year of residency. *Id.,* ¶ 21. The

complaint alleges that the defendant's grievances committee decided that the decision not to promote the plaintiff was an error.  *Id.,* ¶ 22.  Another fourth year resident had been hired.  *Id.,* ¶ 22.  The plaintiff was not permitted to enter his PGY-4.  *Id.,* ¶ 23.  The defendant stated that the plaintiff must repeat his third year residency.  *Id.,* ¶ 23.  The defendant did not guarantee a fourth year residency to the plaintiff.  *Id.,* ¶ 23.

   The plaintiff was not given a statement from the defendant that the plaintiff had completed his PGY-3.  *Id.,* ¶ 24.  The defendant "issues letters to potential training programs indicating that [the plaintiff] had two 'unsuccessful' third years of residency."  *Id.,* ¶ 24.  The plaintiff had not been able to find a residency to continue his surgical training.  *Id.,* ¶ 26.

   The complaint alleges that the defendant has discriminated against him on the basis of an adversity or hostility as to his national origin.  The complaint alleges that the defendant has discriminated against other residents who were from Iran, Sudan and Pakistan.  *Id.,* ¶ 25.

   The complaint is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).  State law claims are brought under the Pennsylvania Human Relations Act, ("PHRA"), 43 P.S. § 955.  The court has

3

jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f) and (g) and the doctrine of pendant jurisdiction.

The complaint states two separate claims against the defendant.  Count I of the complaint states a claim that the plaintiff was made to work in a hostile work environment in which he was subjected to adverse conditions and decisions as a result of discrimination against him based upon his Iranian origins.  Count II states a claim under the Pennsylvania Human Relations Act of national origin workplace hostile environment discrimination.

An answer to the complaint was filed on February 11, 2008.  (Doc. 3).  The answer admits certain factual allegations made in the complaint and denies certain other factual allegations made in the complaint.  The answer sets forth twenty-five affirmative defenses.  Under the March 21, 2008 case management order (Doc. 9), discovery ended on August 15, 2008.

The defendant filed a motion for summary judgment, a supporting brief and a LR 56.1 statement of undisputed facts[1], (Doc. 19) on September 15, 2008.[2]  The plaintiff filed a brief in opposition to the defendant's motion for summary judgment

---

[1] The LR 56.1 statement is also docketed at Doc. 19.  It should have been separately docketed.

[2] The brief in support is also docketed at Doc. 19.  It should have been separately docketed.

on October 10, 2008. (Doc. 25).  The plaintiff filed a responsive LR 56.1 statement.  (Doc. 24).  The defendant's summary judgment factual documentation is bound and consists of documents A through LLL.  The plaintiff's summary judgment factual documentation is attached to the plaintiff's LR 56.1 statement.  (Doc. 24).

   The defendant filed a reply brief (Doc. 26) on October 20, 2008.

   The defendant argues that the plaintiff failed to initiate the civil action within the time limits established under federal law (as to the Title VII claim) and state law (as to the PHRA claim).  The defendant argues that it is entitled to summary judgment because the plaintiff can not establish any facts that support his claim of national origin discrimination, and specifically can not establish a *prima facie* case that he is qualified to be promoted to a fourth year residency.  The defendant argues that Wellspan Health is an entity separate from York Hospital and that the complaint should be dismissed as to defendant Wellspan Health.

   Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its

5

motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).

   A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

   Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248.  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v.*

6

*Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court in connection with a motion for summary judgement "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

The first argument of the defendant is that the plaintiff failed to file a timely complaint with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") and that the civil action is accordingly out of time and is barred as a matter of law on that basis.

The plaintiff in opposition does not refute that he did not file a complaint within 180 days after the adverse employment action, the failure to promote him, on January 26, 2005. He acknowledges that his PHRC complaint was filed on November 22, 2005, 300 days after the adverse employment action. No argument is presented by the plaintiff for the timeliness of the PHRC filing or for the preservation of the PHRA claim despite no timely PHRC filing.

As for the issue of the timeliness of the EEOC filing on November 22, 2005, 300 days after January 26, 2005, the defendant asserts that the adverse employment action occurred on January 5, 2005, when the defendant notified the plaintiff that he would not be promoted to a fourth year surgical residency. The plaintiff contends, however, that the adverse employment action occurred on January 26, 2005 "when the SEC

finalized its decision not to promote plaintiff to PGY-4."
(Doc. 25, page 8).

In paragraphs 81, 82 and 83 of its LR 56.1 statement, the defendant states:

> 81. Dr. Fielding notified Plaintiff of the decision on January 5, 2005.
>
> 82. Dr. Fielding met with Plaintiff on several subsequent occasions to discuss the decision as well as areas where in needed to approve.
>
> 83. The vote was finalized at an SEC meeting on January 26, 2005.

(Doc. 19-4).  We have also examined the plaintiff's LR 56.1 statement's responses to these points.  (Doc. 24, ¶¶ 81, 82 and 83).  It is not free from dispute that the adverse employment action occurred on January 26, 2005, even though Dr. Fielding had advised the plaintiff on January 5, 2005 of what was to occur.  We would expect the fact finder to find the later date, involving the official board decision, to be the date of the action.  The defendant's motion for summary judgment on the basis of an untimely EEOC complaint lacks merit, and summary judgment in the defendant's favor should not be granted on that basis.

The second summary judgment argument of the defendant concerns the merits of the plaintiff's employment discrimination claim.

Although the complaint presents the plaintiff's claim as a hostile environment claim, the claim involves a failure to promote.  The parties have both argued this case as a pretext case to which the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972), applies[3].  "This framework has three steps: (1) the plaintiff bears the burden of establishing a *prima facie* case of discrimination; (2) the burden then shifts to the defendant, who must offer a legitimate non-discriminatory reason for the action; and (3) if the defendant satisfies this burden, the plaintiff must then come forth with evidence indicating that the defendant's proffered reason is merely a pretext."  *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 619 (3d Cir. 1996).

There is no rigid formulation of a *prima facie* case under *McDonnell Douglas* and the requirements may vary with different factual situations.  *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 938 (3d Cir. 1997).  Basically, a *prima facie* case is comprised of the following four elements: (1) the plaintiff belongs to the protected class; (2) the plaintiff was qualified; (3) the plaintiff was rejected or fired; and (4) after the rejection or firing, the employer sought applicants with the plaintiff's qualifications.  *Id.* at

---

[3] The plaintiff's brief frames the argument as whether the plaintiff was the victim of national origin discrimination in that he was treated in a manner that was contrary to the defendant's policies and procedures and was denied his due process rights.  But the plaintiff's argument acknowledges that the task of the court is to determine whether there is proof of a wrongfully discriminating failure to promote and that this task involves *inter alia* a determination whether there is proof that the plaintiff was qualified for the position sought.

939. As an alternative to the fourth element, a plaintiff can show that the position was filled with a person not belonging to the protected category. *Id.*; *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996).

If a plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate some legitimate nondiscriminatory reason for the adverse employment decision. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). An employer satisfies its burden of production by introducing evidence which would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. *Id*. "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id*.

Once the defendant meets its relatively light burden by articulating a legitimate reason for the non-promotion, the burden of production rebounds to the plaintiff and to defeat summary judgment the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). To avoid summary

judgment, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact finder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id*. (citations omitted).  "To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether a discriminatory animus motivated the employer, not whether the employer is 'wise, shrewd, prudent, or competent.'" *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3d Cir. 1995).  Rather, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reasons that a reasonable fact finder could rationally find the proffered reasons unworthy of credence and infer that the employer did not act for those asserted reasons. *Fuentes*, *supra*, 32 F.3d at 765.

   The defendant argues that there is not a basis for the plaintiff to defeat summary judgment as to the existence of a *prima facie* case.  The defendant argues that the plaintiff can not establish with evidence the existence of a *prima facie* case because he can not establish that he was qualified for the promotion that he did not receive.  The issue for summary judgment purposes is fairly states as whether there is evidence from which a reasonable fact finder could infer that

12

the plaintiff is qualified for promotion from the third year surgical residency to a fourth year surgical residency.  The defendant argues that the decision of the Surgical Educational Committee not to promote the plaintiff from a third year surgical residency to a fourth year surgical residency was made in the established manner by experienced faculty surgeons who had observed the plaintiff in practice and who had concluded that promotion was not warranted because the plaintiff had difficulty assimilating his book knowledge into clinical practice.  They had repeatedly discussed their observations with him.  He was unable to improve his performance.  The defendant argues that there is not some other basis for an evaluation of qualifications for such a promotion that has been shown to be reasonably applicable.

   The plaintiff in opposition to this argument of a lack of evidence to establish qualification for the promotion points to no evidence other than some differing evaluations among the evaluators who have during the past several years evaluated the plaintiff's skills and knowledge and material abilities. The plaintiff's arguments concern his contention of the lack of an adequate remediation process for a surgical resident denied a promotion and the general perception of other Iranian and Pakastani surgical residents that they have received different treatment from that of other surgical residents. The plaintiff does not point to evidence that supports an inference that he was qualified to be promoted to become a fourth year surgical resident.

It is plainly obvious that the skills that a surgeon must possess are skills that, to be evaluated in a meaningful manner, must be evaluated by other surgeons.  Although the plaintiff presents some criticisms of the evaluation process here, nevertheless, it is not disputed that the thirteen member Surgical Education Committee reported in the minutes of the November 17, 20074 meeting as follows:

> On November 17, 2004, the SEC met to evaluate the residents. Thirteen physicians attended this meeting. The meeting minutes reflect serious concerns the physicians shared about Dr. Mohebi's performance:
>
> • "Patient Care: Parsa continues to struggle in this area, **showing no improvement**. He exhibits a serious lack of recognition of signs of critical-care patients. He does not follow up on things as are necessary. There seems to be no progression of learning; information does not appear to be absorbed and understood in practice. He has a severe inability to retain critical information regarding patient-care and **has failed to give important updates to appropriate peers and co-workers**. He is far behind in his abilities to run trauma codes; the lower-level residents are more capable in this area than he. **He cannot be depended upon to provide safe patient care**. There are very serious concerns of his understanding and abilities in this competency."
>
> • "Medical Knowledge: He has a limited knowledge of critical-care issues. He is **very behind in his knowledge of general surgery**, although he has been very actively involved in researching plastic surgery issues, as this is his interest. He continues to appear unable to retain important information. **There are very serious concerns of his level of medical knowledge.**"
>
> • "Overall, there are very serious problems with his ability to function as a surgical resident. **He continues to show little, if any, improvement, although he has an informed understanding of his shortcomings**. His patient care abilities, medical knowledge, and communication skills are the issues that cause the highest level of concern by the committee. **It was unanimously decided that he is**

>    **unable to meet the requirements necessary to maintain as a surgical resident in this program**."

(Doc. 19-4, ¶ 79). The Committee voted unanimously not to promote the plaintiff to a fourth year surgical residency position.  *Id.,* ¶ 80.  Accord, Doc. 24, ¶¶ 79, 80.  The plaintiff argues that the Committee's assessment should not be taken as a candid and objective assessment of the plaintiff's qualifications because the plaintiff was not removed from the program: "Defendants would have the Court believe that Plaintiff was a danger and could not be permitted to advance in the program.  If he was so dangerous, the obvious remedy would be to remove him from the program, entirely."  (Doc. 25, page 14).  This argument misses the mark.  The Committee's explanation of its decision addressing the plaintiff's qualifications for promotion constitutes a focused explanation of the unanimous decision of thirteen experts in a highly specialized and potentially life-saving (or life-ending) profession that the plaintiff had not shown that he had acquired the full range of skills to be advanced to the next level.  The element of danger in the erroneous promotion of an unqualified candidate is inherent.  It was not indicative of bad faith, as the plaintiff's argument suggests, for the Committee to incorporate considerations of patient safety (hence, considerations of "danger") in to its determinative process.

   The prospect of the fact finder in this civil action finding, contrary to the Committee finding, that this

15

candidate was qualified, is not a reasonable prospect, since to do so would be to decide that issue differently from thirteen experts who were qualified to make such a finding. Where the court determines that a reasonable fact finder could not reasonably find that the party with the burden of proof can produce evidence that reasonably supports the inference that party needs to establish to establish a material element of that party's case, summary judgment against that party is proper. *Celotex, supra.*

It is not necessary for the court to reach the defendant's third argument. In that the plaintiff can not establish a *prima facie* case of employment discrimination, it is recommended that the defendant's motion for summary judgment be granted and that the Clerk of Court be directed to close the case[4].

                                         ***/s/ J. Andrew Smyser***
                                         J. Andrew Smyser
                                         Magistrate Judge

Dated:   December 2, 2008.

---

[4] Upon the request of the defendant (Doc. 19), oral argument had been scheduled for November 20, 2008. The plaintiff by motion requested on November 18, 2008 that the argument be continued for at least thirty days. By Order of November 18, 2008, oral argument was cancelled. We do not consider it worthwhile to delay a recommendation that the defendant's motion for summary judgment be granted in this case.