**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PARSA MOHEBI, M.D.,** : CIVIL ACTION NO. 1:07-CV-2255 | |
| : | |
| **Plaintiff** : | |
| : (Judge Conner) | |
| v. : | |
| : | |
| **YORK HOSPITAL/WELLSPAN** : | |
| **HEALTH**, : | |
| : | |
| **Defendant** : | |

## ORDER

AND NOW, this 10th day of March, 2009, upon consideration of the report of the magistrate judge (Doc. 33), recommending that defendant's motion for summary judgment (Doc. 19) be granted, and, following an independent review of the record, it appearing that plaintiff advances a disparate treatment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1),[1] and that a prima facie case for such a claim requires plaintiff to establish that he (1) is a member of a protected class; (2) is "qualified for the position" in question; (3) "was either not hired or fired from that position"; (4) and that such action occurred "under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class," see Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999), and it further appearing that plaintiff contends that defendant refused to promote him from a

---

[1] Plaintiff also advances a disparate treatment claim under the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. ANN. § 955, the analysis of which is identical to his Title VII action. Accordingly, the instant discussion applies with equal force to the PHRA claim.

third-year residency to a fourth-year residency due to his Iranian national origin, and that defendant's Surgical Educational Committee unanimously decided not to promote plaintiff, (see Doc. 19, Ex. SS at 258), and that this decision was supported by evidence that plaintiff's performance on the ABSITE proficiency examination failed to satisfy faculty expectations, that his performance during mock oral examinations was substandard, and that he lacked the capability to perform the duties required of a fourth-year resident,[2] (Doc. 19, Ex. P at 16-17), and the court

---

[2] Plaintiff relies on a series of satisfactory performance evaluations when arguing that he was qualified for promotion to a fourth-year residency position. (See Doc. 25 at 10; Doc. 24, Exs. 6-15; 17-29; 31.) However, no reasonable jury could credit these evaluations in light of the myriad negative performance reviews plaintiff accumulated. For example, on one occasion plaintiff prescribed a lethal dose of medication to a patient. Fortunately, pharmacists discovered the error before the medication was administered. (Doc. 19, Ex. QQ; Doc. 19, Ex. FFF.) Following the incident, Dr. Keith Clancy, Medical Director of Trauma & Surgical Critical Care, observed that plaintiff "didn't seem phased by the near fatal error" and that he "continues to be a danger to patients." (Doc. 19, Ex. FFF.) Plaintiff asserts that such mistakes are not unique and that "other attendings may make those mistakes." (Doc. 19, Ex. S at 234.) As a result of the prescription, however, Dr. Clancy requested that plaintiff be removed from his position as chief resident of the trauma team for two months. (Doc. 19, Ex. QQ.)

Other supervising physicians noted that plaintiff had difficulty retaining information and making treatment decisions under pressure. Dr. Peter L. Fielding, a supervising doctor in defendant's residency program, conducted training sessions with plaintiff and required him to prepare a memorandum after each session recounting the material discussed. Dr. Fielding imposed this requirement because he was repeatedly "going over the same issues" with plaintiff, who "was not progressing [in the topics of study] at all." (Doc. 19, Ex. P at 24.) Dr. Fielding characterized plaintiff's inability to assimilate new material as "very unusual" and stated that other residents encountered no similar difficulty. (Id. at 23.)

The evaluations of Drs. Clancy and Fielding are consistent with those plaintiff received from supervising doctors during his previous residencies at institutions unaffiliated with this litigation. During his first-year residency, supervising physicians noted that he exhibited below-average understanding of the ailments of patients whom he treated, (Doc. 19, Ex. F ¶ 2), and his second-year residency evaluations reflect that he repeatedly performed inadequately or below expectations, (Doc. 19, Exs. H, J-N). The examples are not exhaustive of the instant

therefore concluding that plaintiff has failed to demonstrate that he was qualified for promotion, Mauriello v. Univ. of Med. And Dentistry of N.J., 781 F.2d 46, 51 (3d Cir. 1986) ("In an educational setting, a student bears a heavy burden in persuading the courts to set aside a faculty's judgment of academic performance."), and the court further concluding that plaintiff has not identified similarly situated individuals outside of plaintiff's protected class whom defendant treated differently, and that he has not otherwise proffered facts that constitute either direct or circumstantial evidence of discriminatory animus,[3] and the court finding that plaintiff has therefore failed to satisfy his prima facie burden, see Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (observing that plaintiff must

---

record, which is replete with performance reviews demonstrating that plaintiff lacked the competency necessary to progress to a fourth-year surgical residency. (See also Doc. 19, Exs. T-W, Z-LL, PP-UU.)

[3]Plaintiff has identified no resident who received similar performance reviews or encountered difficulties similar to those reflected in the instant record. The individual hired for a fourth-year position following defendant's decision not to promote plaintiff is of Pakistani origin and has successfully completed the residency program. (Doc. 19, Ex P at 48-49.) Plaintiff attempts to establish discriminatory animus by relying upon a single inappropriate comment uttered by a supervising physician to another resident at a social event. Plaintiff could not remember what the physician said but recalled that the tone of his voice was sarcastic. (Doc. 24, Ex. 1 at 145, 147.) However, plaintiff has not established a nexus between this alleged insult and defendant's failure to promote him, nor has he identified any occasion on which he was the object of a discriminatory action or insult. The physician's isolated comment is insufficient to impute discriminatory animus to the Surgical Educational Committee, which unanimously agreed not to promote plaintiff. See, e.g., Poland v. Computer Sci. Corp., No. 07-217, 2005 WL 2454945, at *6 (D. Del. Oct. 5, 2005) (concluding that a single comment that allegedly disparaged plaintiff's race was insufficient to establish discriminatory motive by defendant); Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

3

produce evidence that "raises an inference of discrimination"),[4] it is hereby

ORDERED that:

1. The report of the magistrate judge (Doc. 33) is ADOPTED.

2. Defendant's motion for summary judgment (Doc. 19) is GRANTED.

3. The pending motions in limine (Docs. 37, 39, 40, 42, 43) are DENIED as moot.

4. The Clerk of Court is instructed to enter JUDGMENT in favor of defendant and against plaintiff on all claims.

5. The Clerk of Court is instructed to CLOSE this case.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

---

[4]Assuming, *arguendo*, that plaintiff had established a prima facie case of discrimination, his claim would nevertheless fail for lack of evidence of pretext. Defendants have produced overwhelming evidence that plaintiff did not possess the qualifications necessary for promotion. He encountered difficulty when treating patients and when synthesizing new material. See supra note 2. On at least one occasion, he wrote a prescription that placed a patient's life in jeopardy. Id. In an educational setting, instructors possess discretion to assess whether students have met expectations. See Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225, n. 11 (1985) ("University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." (quotation omitted)); Mauriello, 781 F.2d at 51. The need for such deference is particularly acute in the context of a surgical residency, where an under-qualified physician may endanger the well-being of patients entrusted to the physician's care. No reasonable jury weighing the present record could conclude that defendant acted for any purpose other than preventing plaintiff from entering a position for which he lacked the requisite qualifications.